IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA MACK and JEREMY MACK, | : | |
| individually and as husband and wife, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. 19-5106 |
| | : | |
| v. | : | |
| | : | |
| AVERTEST, LLC, d/b/a AVERHEALTH, | : | |
| CHRISTINE DARRAH, in her individual | : | |
| capacity only, and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                    April 28, 2020

The plaintiffs, who are husband and wife, commenced this civil-rights action alleging a probation officer arrested the wife after receiving a report that her urine contained alcohol, although her breathalyzer and an alcohol monitoring bracelet that was attached to her ankle indicated a negative result. The plaintiffs maintain that the ankle bracelet is extremely accurate, while urine testing for alcohol has varying degrees of accuracy—a fact that they claim the probation officer was aware of at the time of the wife's arrest. While the wife was ultimately released from jail after the probation department learned that a second urine test had produced a negative result for alcohol, the wife had already been incarcerated for approximately three weeks.

After the wife's release from incarceration, the probation officer directed her to submit to more breathalyzer and urine tests in accordance with her probation conditions. Each time, the *breathalyzer* indicated that she had not consumed alcohol. However, the first *urine* sample provided by the wife often tested positive for alcohol and a second test had to be done. The plaintiffs then learned from the testing company, who is also a defendant, that a more expensive,

but more accurate, testing methodology could be used if the plaintiffs were to pay in advance. As a result, every remaining time that the wife's first urine sample tested positive for alcohol, the defendant testing company automatically used the more accurate testing methodology. Each time, this methodology confirmed that the wife had not consumed alcohol.

The plaintiffs have brought the instant action in which they assert claims under 42 U.S.C. § 1983 for malicious prosecution and false imprisonment/false arrest against the probation officer, essentially alleging that the probation officer did not have probable cause to believe that the wife had consumed alcohol at the time of her arrest. They also assert claims against the testing company for negligence, violations of the Pennsylvania Unfair Trade Practices & Consumer Protection Law, and a loss of consortium claim.

Both the probation officer and the testing company have filed motions to dismiss. The probation officer argues that (1) the plaintiff has not stated plausible section 1983 claims for malicious prosecution and false imprisonment/false arrest and (2) she is entitled to qualified immunity. The testing company moves to dismiss on the grounds that (1) the plaintiffs failed to state a claim for violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law and (2) the plaintiffs have pled insufficient facts to support a claim for punitive damages.

After considering the applicable record and the parties' submissions, and after hearing oral argument from counsel, the court will grant the probation officer's motion to dismiss. The court declines to exercise supplemental jurisdiction over the state law claims raised against the testing company, and therefore will deny without prejudice the testing company's motion to dismiss. The court will dismiss this action without prejudice to the plaintiffs to reassert their remaining claims against the testing company in state court.

## I.      PROCEDURAL HISTORY

On October 31, 2019, plaintiffs Jessica Mack ("Mrs. Mack") and Jeremy Mack ("Mr. Mack") (collectively, "the Macks") filed a complaint against Avertest, LLC doing business as Averhealth ("Avertest"), the Lehigh County Court Adult Probation & Parole Department (the "Department"), Lehigh County, Christine Darrah ("Darrah"), and John Does 1-10.[1] Doc. No. 1. Darrah and the Department moved to dismiss the complaint on November 22, 2019. Doc. No. 3. Darrah, this time along with Lehigh County, again moved to dismiss the complaint for failure to state a claim on December 3, 2019. Doc. No. 10. Avertest filed an answer to the complaint on December 5, 2019, along with a crossclaim against the other defendants.[2] Doc. No. 11. The next day, the Macks responded to the answer and the motions to dismiss by filing a first amended complaint.[3] Doc. Nos. 12, 13.

In the amended complaint, the Macks allege that as of November 21, 2017, Mrs. Mack was complying with the requirements of "her sentencing and probation orders," which included, *inter alia*, abstaining from consuming alcohol and wearing an alcohol monitoring bracelet. Am. Compl. at ¶ 7. Mrs. Mack could not remove the alcohol monitoring bracelet, and it sent an electronic report to the Department on a daily basis. *Id.* at ¶ 10. The bracelet provides an "extremely accurate" reading of whether its wearer has consumed alcohol. *Id.* at ¶ 12.

---

[1] In the complaint, the Macks asserted causes of action against the defendants for malicious prosecution/wrongful arrest, false imprisonment/false arrest, a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), negligence/gross negligence, and loss of consortium. Compl. at ECF pp. 9–12. Their claims against Darrah were in her individual and official capacities. *Id.* at ECF p. 1.

[2] In the crossclaim, Avertest asserted that the incident, damages, and losses alleged in the complaint, if proved at trial to be true, were caused by the other named defendants and not as the result of any fault or intentional, willful, careless, reckless, malicious and/or negligent acts or omissions on the part of Avertest. Avertest, LLC, d/b/a Averhealth Answer to Compl., Crossclaim against Christine Darrah, John Does 1-10, Lehigh County, Lehigh County Court Adult Probation & Parole Department at 21–22, Doc. No. 11.

[3] The Macks filed a corrected version of the amended complaint on December 9, 2019. Doc. No. 13.

On November 21, 2017, Mrs. Mack made her required call to the Department's hotline. *Id.* at ¶ 16. During the call, Mrs. Mack was directed to report to Avertest to submit to a breathalyzer and urine test. *Id.* Mrs. Mack then submitted to a breathalyzer test at Avertest. *Id.* at ¶ 17. The breathalyzer test did not show that Mrs. Mack consumed alcohol. *Id.* Mrs. Mack was then directed to provide a urine sample, which she did. *Id.* at ¶ 18. The initial test of this urine sample indicated a positive result for alcohol, yet this result was not conveyed to Mrs. Mack. *Id.* at ¶ 19.

Regarding this urine testing, the Macks assert that "urine testing for alcohol is known to have varying degrees of accuracy."[4] Am. Compl. at ¶¶ 21, 23. They note that "[d]epending on the methodology used, urine testing for alcohol has a Positive Predictive Value that ranges between seventy to eighty-five percent . . . [and] creates a false positive that ranges between three and sixteen percent[.]" *Id.* at ¶¶ 21, 22. Thus, to ensure the original positive result is not a false positive, Avertest sends a second specimen out of its lab for further testing. *Id.* at ¶ 23.

The following day, Mrs. Mack was directed to report to the Department. *Id.* at ¶ 20. Upon her arrival, Darrah, who served as Mrs. Mack's "Parole Officer" and "was responsible for [ensuring her] compliance with [the] sentencing and probation orders," immediately arrested her. *Id.* at ¶¶ 9, 20. Darrah arrested Mrs. Mack despite knowing that (1) urine testing for alcohol "[a] had varying degrees of accuracy depending upon the methodology used; and, [(b)] had significant false positive results regardless of the methodology used," (2) "alcohol monitoring ankle bracelets were significantly, materially, and meaningfully more accurate than urine testing for alcohol," and (3) the alcohol monitoring bracelet never indicated that Mrs. Mack had consumed alcohol. *Id.* at ¶¶ 14, 25, 26.

---

[4] The court treats as true the Macks' factual assertions for purposes of resolving the instant motion to dismiss.

After Mrs. Mack's arrest, Mr. Mack promptly went to Avertest. *Id.* at ¶ 28. While there, Avertest (presumably through its employees) informed him that (1) the United States Food and Drug Administration recommends the evaluation of a second sample to confirm the positive result of the first test under these circumstances, (2) they would send out a second sample for testing, (3) it typically took seven to ten business days for return of the second test results, and (4) they were surprised to see him because the Department typically requests a second test after a positive result. *Id.* at ¶¶ 28, 29.

Mrs. Mack remained incarcerated from November 22, 2017, until December 12, 2017, when she was released after her second urine test produced a negative result for alcohol. *Id.* at ¶¶ 31, 32. Following her release, Mrs. Mack was directed to report to Avertest for a breathalyzer and urine test on December 14, 2017. *Id.* at ¶ 34. She reported to Avertest for both tests. *Id.* Mrs. Mack's breathalyzer test did not indicate that she had consumed alcohol. *Id.* at ¶ 35. The next day, Darrah contacted Mrs. Mack and informed her that her urine tested positive for alcohol. *Id.* at ¶ 36. On this occasion though, Darrah did not arrest Mrs. Mack; instead, she directed her to retake the urine test. *Id.* at ¶ 37.

From approximately December 12, 2017, until the beginning of February 2018, Mrs. Mack was directed to appear at Avertest's lab one to three times per week. *Id.* at ¶ 40. During this period, her first urine sample tested positive for alcohol consumption approximately ten or eleven times. *Id.* at ¶ 41. Mrs. Mack was not arrested after any of these positive test results. *Id.*

After Mrs. Mack's December 14, 2017 false positive test result, Avertest told her that it had a more accurate testing methodology for which she could pay an additional amount, in advance, if the first test results returned a positive indication for alcohol.[5] *Id.* at ¶ 42. Mrs. Mack

---

[5] The Macks allege that Mrs. Mack paid $8.00 for each less accurate urine test, and $16.00 for each more accurate test. Am. Compl. at ¶¶ 50–51.

paid in advance for this more accurate methodology, and Avertest automatically used this methodology for each of the other occasions when her first test results returned positive for alcohol. *Id.* at ¶¶ 43, 44. On each occasion, the more accurate testing methodology indicated that Mrs. Mack had not consumed alcohol. *Id.* at ¶ 44.

The Macks assert that Mrs. Mack never consumed alcohol in violation of her sentencing and probation orders. *Id.* at ¶ 8. Her alcohol monitoring ankle bracelet never indicated that she had consumed alcohol. *Id.* at ¶ 13. The Macks claim that Darrah lacked probable cause to arrest Mrs. Mack on November 22, 2017, because, *inter alia*, (1) she had not asked for, nor received the results of a second test, (2) Darrah knew about the differences in accuracy of the urine testing and the alcohol monitoring ankle bracelet, and (3) the alcohol monitoring ankle bracelet—the more reliable measure of alcohol consumption—never showed that she had consumed alcohol. *Id.* at ¶¶ 14, 27, 30.

The Macks also claim that Darrah violated the Department's policy by arresting her without first obtaining a second positive test result. *Id.* at ¶ 30. Darrah had knowledge of other individuals who had been incarcerated for a false positive test result. *Id.* at ¶ 38. She also "had a pattern and/or history of arresting and incarcerating individuals with negative results from alcohol monitoring ankle bracelets and false positive results from urine tests without a second urine test." *Id.* at ¶ 39. She further knew that Avertest used a less accurate method for urine testing unless the individual paid additional monies for the more accurate methodology. *Id.* at 45. Darrah never shared this knowledge about Avertest using less accurate testing to Mrs. Mack. *Id.* at ¶ 46.

Regarding Avertest, the Macks assert that it knew about alcohol testing having varying degrees of accuracy depending on the methodology used. *Id.* at ¶ 48. Yet, it recklessly used the less accurate methodology and then charged customers like Mrs. Mack for a more accurate

methodology. *Id.* at ¶ 49. Avertest also failed to inform Mrs. Mack of the more accurate methodology. *Id.* at ¶ 53.

Based on the above allegations, Mrs. Mack is pursuing the following causes of actions: (1) section 1983 malicious prosecution claim against Darrah in her individual capacity; (2) section 1983 false arrest/false imprisonment claim against Darrah in her individual capacity; (3) negligence/gross negligence against Avertest; and (4) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1–201-9.3 ("UTPCPL"). *Id.* at ECF pp. 10–12.[6] Mr. Mack asserts a loss of consortium claim against Avertest.[7] *Id.* at ECF pp. 12–13.

In response to the amended complaint, the court issued an order on December 10, 2019, denying as moot the previously filed motions to dismiss. Doc. No. 14. Darrah and Avertest then moved to dismiss the amended complaint on December 19, 2019, and December 23, 2019, respectively. Doc. Nos. 15, 16. The Macks filed their opposition to Avertest's motion to dismiss on February 5, 2020, and their response to Darrah's motion to dismiss on February 6, 2020.[8] Doc. Nos. 22, 26.

The court held oral argument on the motions to dismiss on February 24, 2020.[9] At the request of counsel, the court gave the parties additional time to file supplemental briefs on the issues of (1) whether a probation officer initiates a criminal proceeding when finding a probation violation and (2) whether a person in his or her individual capacity can act under the color of state

---

[6] The amended complaint lacks page numbers, so the court uses the electronic case filing system's pagination.
[7] The Macks appear to assert all of the causes of action against the John Doe defendants. *See* Am. Compl. at ¶ 6 ("Each of these parties are incorporated as Defendants in each and every count and averment listed above and below, upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendants, liable to Plaintiffs hereunder.").
[8] The Macks did not timely file their response to Darrah's motion to dismiss, and Darrah filed a motion to preclude a response on February 5, 2020. Doc. No. 21. Darrah later informed the court that she wished to withdraw the motion to prelude, and the court entered an order denying the motion as moot on February 7, 2020. Doc. No. 25
[9] During oral argument, counsel for Avertest indicated that they were no longer pursuing any crossclaims (as they had with their answer to the complaint). As such, the court entered an order directing the clerk of court to terminate the crossclaims. Doc. No. 31.

law. Doc. No. 30. Both Darrah and the Macks filed briefs on these issues on March 3, 2020. Doc.

Nos. 32, 33. They also filed reply briefs on March 10, 2020. Doc. Nos. 34, 36.

The motions to dismiss filed by Avertest and Darrah are now ripe for disposition.

## II.    DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a

complaint or a portion of a complaint for failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the

allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)

(citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of

[this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the

recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In

other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted).

"In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported

conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and

8

sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation and internal quotation marks omitted). The court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted).

## B.     Analysis

### 1.     Section 1983 Claims for Malicious Prosecution and for False Imprisonment/False Arrest Against Darrah

To determine whether the Macks have stated a plausible malicious prosecution and/or a plausible false imprisonment/false arrest claim against Darrah, the court first notes the elements that the Macks must plead to state each claim, and then determines whether there are well-pleaded factual allegations sufficient to state a plausible claim for relief. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010) (referencing *Twombly* and *Iqbal* standards). To state a section 1983 claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007) (citation omitted).

The court preliminarily focuses on the first element of the tort of malicious prosecution, which is the initiation of a criminal proceeding, as the parties have prepared supplemental briefing on this very issue. The court notes that the Third Circuit has never directly addressed the issue of whether a probation officer initiates criminal proceedings for purposes of a malicious prosecution claim when the probation officer arrests a probationer for a possible violation of the probationer's

conditions of probation. A variety of district courts, several within the Third Circuit have, however, taken up this task.

As Darrah notes, the Middle District of Pennsylvania has explained that criminal proceedings "are commenced with the filing of an information or indictment based upon a charge decision made by a state attorney or grand jury, or at least an arrest pursuant to a summons or arrest warrant issued by a committing magistrate." *Felker v. Christine*, 796 F. Supp. 135, 141 (M.D. Pa.) (citing *Miami Herald Publ'g Co. v. Ferre*, 636 F. Supp. 970, 977–78 (S.D. Fla. 1985)), *aff'd*, 983 F.2d 1050 (3d Cir. 1992). The Middle District went on to conclude that, "the defendant participated in a proceeding to revoke probation, a *quasi*-criminal proceeding at best, which does not rise to the level of a criminal proceeding as that term is understood in the context of a malicious prosecution." *Id.*; *see also Zabresky v. Von Schmeling*, Civ. A. No. 3:12-20, 2014 WL 414248, at *5 (M.D. Pa. Feb. 4, 2014) ("As a threshold matter, no court has held that a probation violation is tantamount to a criminal prosecution.").

However, as the Macks rightly point out, *Felker* is not binding on this court. Pls.' Resp. to Def. Darrah's Suppl. Mem. of Law ("Pls.' Resp. to Suppl. Mem.") at 2, Doc No. 36. Furthermore, the court does not find the reasoning provided in *Felker* to be overly persuasive or applicable to this instant case. In fact, the cases *Felker* relies on for the proposition that Pennsylvania follows the rule that an information or indictment is needed to start a criminal proceeding, *Jacquard Knitting Machine Co. v. Ordnance Gauge Co.,* 213 F.2d 503 (3d Cir. 1954) and *Bendorf v. McCormick,* 674 F. Supp. 15, 16 (W.D. Pa.1 987), do not seem to even reference criminal proceedings, let alone how they are initiated in Pennsylvania.[10] Furthermore, in *Felker*, the

---

[10] The court does not have an issue with the notion that criminal cases generally proceed to their ultimate resolution in Pennsylvania only after the filing of an indictment or criminal information. *See* 42 Pa. C.S. § 8931 (providing for criminal proceedings to be initiated by criminal information or indictment); *see also* Pa. Const. art. I, § 9 (referencing prosecutions by "indictment or information"). This notion by itself, however, would be incomplete because the

perceived threat to probationer's liberty never occurred, while in this instant case, Mrs. Mack was arrested and then spent over two weeks in jail, and Darrah was the arresting officer.[11]

Additionally, as the Macks have noted, district courts across the country have found that petitions to revoke probation can serve as the basis for a malicious prosecution claim. *See Williams v. Georgia Dep't of Corr.*, Civ. A. No. 1:11-CV-1296-AT, 2012 WL 12895637, at *4 (N.D. Ga. Dec. 18, 2012) (finding that "a petition to revoke probation and adjudicate the probationer guilty may serve as the basis for a malicious prosecution claim."); *Hernandez v. City of Oakley*, Civ. A. No. C-11-02415 JCS, 2012 WL 5411781, at *18 (N.D. Cal. Nov. 6, 2012) ("[W]here it is alleged that a probation officer has wrongfully requested that a court revoke probation, the relevant constitutional violation is malicious prosecution."); *Landon v. Cty. of Orange*, No. 08-CV- 8048 (CS)(LMS), 2009 WL 2191335, at *6 (S.D.N.Y. July 23, 2009) (allowing malicious prosecution claim based on probation revocation proceeding). None of these cases, however, serve as binding

---

Pennsylvania Rules of Criminal Procedure indicate that criminal proceedings are "instituted by: (1) filing a written complaint; or (2) an arrest without a warrant" under certain circumstances (such as when a police officer observes a crime). Pa. R. Crim. P. 502; *see also id.*, cmt. ("Criminal proceedings in court cases are instituted by 1) the filing of a complaint, followed by the issuance of summons or arrest warrant; or by 2) a warrantless arrest, followed by the filing of a complaint."). Courts have consistently recognized that the filing of a criminal complaint constitutes the initiation of criminal proceedings in Pennsylvania. *See Garcia v. Attorney Gen.*, 462 F.3d 287, 292 (3d Cir. 2006) ("The filing of a criminal complaint is sufficient to initiate criminal proceedings in the Commonwealth and Pennsylvania law does not require the subsequent filing of either an information or an indictment if a plea of guilty . . . is entered."); *see also Trunzo v. Mayer*, 658 F. App'x 654, 658 n.4 (3d Cir. 2016) (stating that police officer's filing of criminal complaint against plaintiff constituted initiation of criminal proceedings); *Torres v. McLaughlin*, 163 F.3d 169, 178 (3d Cir. 1998) (Debevoise, J., dissenting) ("The June 3 criminal complaint constituted a formal charge and the initiation of the criminal proceedings."). Moreover, "[g]enerally, criminal proceedings in court cases are instituted by filing a written complaint." Standard Pa. Prac. 2d § 132:369.

[11] In *Felker*, the plaintiff was on probation and failed to sign a Rules and Regulations form, at his probation officer's request. 796 F. Supp. at 137–38. After receiving approval of the county district attorney, the probation officer filed a petition to show cause why the plaintiff's probation should not be revoked. *Id.* at 138. The petition led to a hearing, during which the government said that it could not go forward with the petition because the plaintiff had a pending appeal from his underlying conviction and sentence and the Superior Court of Pennsylvania had stayed execution of the sentence. *Id.* It does not appear that the plaintiff was ever arrested or otherwise suffered a loss of liberty during this process.

precedent, and this court also finds it appropriate to consider the Second Restatement of Torts, which directly defines the term "criminal proceedings."[12]

> The Second Restatement explains:
>
> (1) The term "criminal proceedings" includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.
> (2) Criminal proceedings are instituted when
>    (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
>    (b) without the issuance of process an indictment is returned or an information filed against him; or
>    (c) he is lawfully arrested on a criminal charge.

Restatement (Second) of Torts § 654 (1977). Here, the Macks maintain that they have a claim for malicious prosecution "based upon the seizure pursuant to the legal process that was initiated by Defendant, Darrah." Pls.' Resp. to Suppl. Mem. at 2. In support of this, they note that "Defendant, Darrah submitted an affidavit, with the conclusion that [Mrs. Mack] failed to be alcohol-free, to the magistrate judge with a request that a warrant be issued for Mrs. Mack's arrest." *Id.* However, as comment d to the Restatement (Second) of Torts § 654 (1977) provides, "[t]he mere fact that a person has submitted to a magistrate an affidavit for the purpose of securing a warrant for another's arrest or a summons for him to appear at a hearing, does not justify a finding that he has initiated criminal proceedings against the other." If this court followed the Restatement, Darrah's action of submitting the affidavit alone was not enough to qualify as the initiation of a criminal proceeding.

---

[12] Although the Macks assert that "binding precedent" shows that Mrs. Mack "was subjected to a criminal proceeding as a result of . . . Darrah's actions," Pls.' Resp. to Suppl. Mem. at ECF p. 2, none of the decisions they cite address the precise issue here. In addition, the Macks cite to two decisions by the Third Circuit Court of Appeals, *Tsakonas v. Cicchi*, 308 F. App'x 628 (2009) and *Bronowicz v. Allegheny Cty.*, 804 F.3d 338 (2015), in support of their assertion that "probation revocation proceedings initiated without sufficient legal justification are analyzed as malicious prosecution claims under the Fourth Amendment." *Id.* at ECF p. 3. While both cases involved causes of action for malicious prosecution against probation officers, neither case specifically addressed nor analyzed whether a probation officer's charge of a probation violation against a probationer satisfies the initiation-of-criminal-proceedings requirement of that cause of action.

However, as noted in the amended complaint, the Macks also allege that Darrah arrested Mrs. Mack when she reported to the Department after her first positive urine test. *See* Am. Compl. at ¶ 20. As comment e to section 654 provides, "[i]f the arrest is valid and lawful, false imprisonment will not lie. But the arrest is then an initial step in a criminal proceeding; and if it is made or instigated without probable cause, the remedy is by an action for malicious prosecution." Restatement (Second) Torts, § 654, cmt. 3. Here, Darrah asserts and the Macks do not dispute that the arrest was made pursuant to a warrant issued by a judge. This comment seems to indicate that the arrest can therefore qualify as the initiation of a criminal proceeding.

Despite this discussion on the issue, this court does not need to conclusively decide whether a malicious prosecution claim can be based on the actions of a probation officer who arrests a probationer, as this case ultimately comes down to whether Darrah had probable cause and/or was entitled to immunity. The probable cause analysis is also essential to the false arrest/imprisonment claims, in addition to being an element of malicious prosecution.

False arrest and false imprisonment are "nearly identical claims." *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005). Both false arrest and false imprisonment claims are premised on an arrest without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). To state a section 1983 claim for false arrest or false imprisonment, the plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). Therefore, the Macks must allege facts sufficient to support a reasonable inference that Darrah acted without probable cause, and if they fail to do so, then both claims fail as a matter of law.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). The court uses a totality-of-the-circumstances approach to assess the reasonableness of the officer's conduct, and the court considers the officer's perspective at the time he or she acted. *Carswell v. Borough of Homestead*, 381 F.3d 235, 246 (3d Cir. 2004). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [the defendant's] knowledge and of which [he or she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the plaintiff had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Usually, as the Macks point out, the existence of probable cause is an issue reserved for the jury or the court after the record is fully developed. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Id.* at 788–89 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). Here, viewing the facts in the light most favorable to the Macks, the court has to assume that at the time Darrah received the positive urine sample, she also possessed and had knowledge of the daily reports of the alcohol monitoring ankle bracelet that Mrs. Mack was required to wear, which showed, with great accuracy, that Mrs. Mack

had not consumed any alcohol. The court also must assume the Darrah was aware that Mrs. Mack's breathalyzer also tested negative for alcohol.

The question therefore becomes whether a reasonable person in Darrah's position could have concluded, based on his or her knowledge, that Mrs. Mack had violated her probation by consuming alcohol. Given that Darrah possessed knowledge that Mrs. Mack's urine tested positive for alcohol despite the negative evidence from the ankle bracelet and breathalyzer, a reasonable jury could not find that Darrah lacked probable cause to arrest Mrs. Mack. *See Newell v. Hernandez*, No. CV 16-4779, 2017 WL 1333315, at *2 (E.D. Pa. Feb. 24, 2017) ("Because Mr. Newell's positive [urine] drug test plead on the face of his Complaint supplied adequate grounds for his arrest and detention, we dismiss Mr. Newell's claims for false arrest and false imprisonment under § 1983 and Pennsylvania law.").

The court recognizes that *Newell* involved only one positive urine test and nothing in the opinion indicates that any other sort of drug or alcohol test was done to indicate a contrary result; nonetheless, even when taking the negative breathalyzer and negative ankle bracelet results into account, this court holds that under the circumstances present here, the positive urine test alone was enough for a reasonable probation officer to conclude that an offense, or more precisely a violation of the conditions of probation, had been or was being committed by the person to be arrested. From Darrah's perspective at the time she acted, she had probable cause to believe that Mrs. Mack consumed alcohol in violation of her probation condition based on the positive urine result. Therefore, this court grants Darrah's motion to dismiss Mrs. Mack's claims for malicious prosecution and for false imprisonment/false arrest. The court will not give the Macks leave to

amend with regards to these claims, as to do so would be futile.[13] Notwithstanding the above analysis, the court must also consider Darrah's arguments concerning qualified and absolute immunity.

The court addresses two types of immunity—absolute and qualified immunity. Both immunities are affirmative defenses that Darrah is entitled to only if this entitlement is clear on the face of the amended complaint. *See Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989) ("In order for the defendants to succeed on a Rule 12(b)(6) dismissal based on absolute immunity, the allegations of appellant's complaint must indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the complaint."). "[P]robation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties." *Id.* at 775. In contrast, probation officers are entitled to only qualified, good faith immunity when they are acting in their executive or administrative capacities. *Id.* The court will first address the applicability of absolute immunity before turning to qualified immunity.

When it comes to absolute immunity, the court cannot conclude that Darrah is entitled to absolute immunity from the face of the amended complaint. Among the rare circumstances requiring absolute immunity is the performance of judicial acts. *See Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Parole and probation officers are "quasi-judicial officials" and are therefore entitled to absolutely immunity only when they are engaged in adjudicatory duties. *See Wilson*, 878 F.2d at 775; *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986); *Thompson v. Burke*, 556 F.2d 231, 236–38 (3d Cir. 1977).

---

[13] "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). Amending a complaint is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Here, the Macks allege that Darrah was performing her duties as the individual supervising Mrs. Mack while she was on probation. *See* Am. Compl. at ¶ 9. They also allege that Darrah arrested Mrs. Mack. Am. Compl. at ¶ 20. Furthermore, the Macks, although only in response to Darrah's supplemental memorandum of law and not in the amended complaint, further allege that Darrah submitted an affidavit and requested a warrant for Mrs. Mack's arrest. Pls.' Resp. to Def.'s Supp. Mem. at 2. These actions by Darrah would not provide her with absolute immunity, as these actions do not fall in line with an adjudicatory duty or involve Darrah acting as a quasi-judicial official. *See, e.g.*, *Bronowicz v. Allegheny Cty.*, Civ. A. No. 12-1023, 2015 WL 8271263, at *3 (W.D. Pa. Dec. 23, 2015) ("In this regard, [the probation officer] maintains that she is entitled to absolute immunity as she was performing adjudicatory functions at the January 2011 probation violation hearing, . . . but Plaintiff has alleged that she was engaged in broader, executive and investigative functions to which absolute immunity would not attach such as, among other things, charging plaintiff with probation violations, arresting him and appearing at a probation violation hearing not as a hearing officer but in more of a prosecutorial role." (internal citation omitted)); *Spiker v. Allegheny Cty. Bd. of Prob. and Parole*, 920 F. Supp. 2d 580, 605 (W.D. Pa. 2013) (concluding probation officer was "not entitled to absolute immunity for seeking the bench warrant or the detainer because those actions are executive in nature. They were taken to enforce the policies of the probation office" (citations omitted)). Since the court determines that the alleged actions are not adjudicatory and therefore do not provide Darrah with absolute immunity, the court turns to whether qualified immunity applies to these actions.

Unlike absolute immunity, qualified immunity would potentially apply because the actions Darrah took were executive and administrative in nature. *See Bieros v. Nicola*, 839 F. Supp. 332, 335 (E.D. Pa. 1993) ("In this case, defendants' actions apparently consisted of gathering

information in order to prepare the pre-sentence report. It appears that the defendants were engaged in an executive or administrative capacity, rather than in an adjudicative capacity, thus entitling them only to qualified immunity."); *Wilson,* 878 F.2d at 776 (holding that parole officers who investigated allegations of parole violations, typed up a warrant application for plaintiff's arrest and assisted in initiating a criminal investigation only performed executive duties); *Harper,* 808 F.2d at 284 (holding probation officer who charged appellant with parole violations and presented evidence to parole board of such wrongdoing, in addition to his general duties, performed executive duties). Darrah would be entitled to qualified immunity if reasonable officials in her position "could have believed, in light of clearly established law, that their conduct comported with established legal standards." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989), *cert. denied*, 493 U.S. 1044 (1990); *see also Bieros,* 839 F. Supp. at 335 ("A qualified immunity only protects defendants if it can be shown that they did not violate any clearly established constitutional or statutory rights of which a reasonable person would have known." (citation omitted)); *James v. N.J. State Police*, No. 18-1432, 2020 WL 1922370, at \*4 (3d Cir. Apr. 21, 2020) ("For qualified-immunity purposes, clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Court of Appeals." (citations omitted)).

The court has already determined that Darrah did not violate any clearly established right of Mrs. Mack insofar as she had probable cause to arrest her for a probation violation. Nevertheless, even if the court were to assume that Darrah violated Mrs. Mack's Fourth Amendment rights, at this stage the court cannot conclude that "no officer of reasonable competence" would understand that he or she did not have probable cause to arrest Mrs. Mack for a probation violation based on the use of alcohol from a positive urine test. *See Messerschmidt v.*

*Millender*, 565 U.S. 535, 554 (2012) ("In light of the foregoing, it cannot be said that 'no officer of reasonable competence would have requested the warrant.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))). Darrah's decision that Mrs. Mack's arrest was supported by probable cause was not "plainly incompetent." *See id.* at 553 (quoting *Malley*, 475 U.S. at 341); *see also James,* 2020 WL 1922370, at *7 ("When properly applied, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)). Darrah would therefore be entitled to qualified immunity, and the court must dismiss the section 1983 claims against her.

## 2.       State Law Claims for Negligence, Violation of the UTPCPL, and Loss of Consortium Against Avertest

The court next turns to the claims against Avertest, which include state law claims of negligence, a violation of the UTPCPL, and a loss of consortium claim. The court declines to exercise supplemental jurisdiction over these remaining state law claims.

Congress has granted district courts with the discretion to decline to exercise supplemental jurisdiction in four specific circumstances. It is appropriate for a district court to decline supplemental jurisdiction over state law claims if:

> **(1)** the claim raises a novel or complex issue of State law,
> **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> **(3)** the district court has dismissed all claims over which it has original jurisdiction, or
> **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In this case, the court has dismissed all federal claims over which the court has original jurisdiction. As the Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even

> though not insubstantial in a jurisdictional sense, the state claims should be
> dismissed as well. Similarly, if it appears that the state issues substantially
> predominate, whether in terms of proof, of the scope of the issues raised, or of the
> comprehensiveness of the remedy sought, the state claims may be dismissed
> without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).  In making the determination

over whether the district court should exercise supplemental jurisdiction, the district court should

consider the generally accepted principles of "judicial economy, convenience, and fairness to the

litigants." *Id.* at 726. "Further, dismissal under § 1367(c)(3) is especially appropriate where, as in

this case, these non-diverse, nonfederal question parties face only state law claims." *Mattern v.

City of Sea Isle*, 131 F. Supp. 3d 305, 320 (D.N.J. 2015), *aff'd*, 657 F. App'x 134 (3d Cir. 2016).

In this instant case, the parties are not diverse and only state law claims remain, which are best

decided by state tribunals.

      When it comes to considering the principle of fairness to the litigants, dismissal of the

UTPCPL claim, as well as the negligence and loss of consortium claims, without prejudice would

not be unfair to the litigants, as the Macks could refile their claims in state court, which would be

a more appropriate forum for certain unsettled issues of state law that have been raised in the

complaint and motion to dismiss. Such issues include whether the elements of fraud still need to

be met in order to assert a violation of the catchall provision of the UTPCPL given the 1996

amendment to the UTPCPL. "[S]ection (c)(1) [of 28 U.S.C. § 1367] indicates and Courts have

held that dismissal is proper where exercising jurisdiction over the claims may require the

resolution of novel or unsettled questions of state law." *Goodwin v. Seven–Up Bottling Co. of

Phila.,* No. Civ. A. 96-CV-2301, 1996 WL 601683, at *6 (E.D. Pa. Oct. 18, 1996).

      Concerning judicial economy, it is not a waste of judicial resources for these claims to be

pursued in state court as the court has not yet entered an initial scheduling order or even held an

initial pretrial conference. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.* 124 F.3d 430, 444 (3d Cir. 1997) ("Because all federal claims were correctly dismissed and dismissal of the remaining contract claims would not be unfair to the litigants or result in waste of judicial resources, we see no abuse of discretion."). Lastly, as for convenience, litigating in a state court in Lehigh County might be easier for all the parties involved as this is where the allegations of the complaint arose. The Avertest defendants indicated during oral argument on the motions to dismiss that they see no reason for this case to proceed in federal court should the court dismiss the federal claims. The Macks also indicated that they agreed with this should the court dismiss the claims against Darrah without leave to amend. Additionally, the court finds that no extraordinary circumstances exist that would compel the exercise of supplemental jurisdiction, and accordingly the court declines to exercise supplemental jurisdiction over the Macks' state law claims against Avertest. The court will dismiss these claims without prejudice to the Macks raising them again in state court, and the court will deny Avertest's motion to dismiss as moot.

### III.    CONCLUSION

The court will grant Darrah's motion to dismiss because the Macks fail to make out a plausible malicious prosecution or false imprisonment/false arrest claim in their amended complaint, and in any event, Darrah is entitled to qualified immunity. The court dismisses these claims with prejudice as amendment would be futile. Given the dismissal of all federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims against Avertest. The court dismisses these claims without prejudice to the Macks reasserting them in state court. The court also denies Avertest's motion to dismiss as moot.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.